IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PAUL PARROTT, as the Representative of a class of similarly situated persons, and on behalf of the International Bancshares Corporation Employees' Profit Sharing Plan and Trust, | § | No. 5:24-CV-01263-DAE |
| *Plaintiff*, | § | |
| v. | § | |
| INTERNATIONAL BANK OF COMMERCE; INTERNATIONAL BANCSHARES CORPORATION; and THE INTERNATIONAL BANCSHARES CORPORATION PROFIT SHARING PLAN COMMITTEE | § | |
| *Defendants*. | § | |

ORDER CONCERNING SEVERABILITY

Before the Court is the status of Mr. Paul Parrott's ("Plaintiff" or "Mr. Parrott") case, which he filed against International Bank of Commerce, International Bancshares Corporation, and the International Bancshares Corporation Profit Sharing Plan Committee (collectively, "IBC" or "Defendants"). (See Dkt. # 1.) The case is before the Court on remand from the U.S. Court of Appeals for the Fifth Circuit. See Parrott v. Int'l Bancshares Corp., 167 F.4th 728 (5th Cir. 2026).

The issue before the Court is a pure question of Texas law: whether certain provisions of the Arbitration Amendment ("the Amendment") to the International Bancshares Corporation Employees' Profit Sharing Plan and Trust (the "Plan") (see Dkt. # 20 at 63–75), which the Fifth Circuit determined to be void, are severable. See Parrott, 167 F.4th at 743 (remanding to this Court "for further proceedings on whether provisions that violate the effective vindication doctrine can be severed"). For the reasons that follow, the Court holds that the provisions are *not* severable.

## BACKGROUND

The Court previously described the facts of this case in its Order Denying Defendants' Motion to Compel Arbitration. (Dkt. # 36 at 2–4.) Instead of reciting the same facts here, the Court incorporates them by reference and will supplement them (they are also described in the Fifth Circuit's February 2026 decision) by reproducing the relevant Amendment and Plan provisions. (See id.); Parrott, 167 F.4th at 733–35.

### I. Relevant Provisions

For clarity, the Court reproduces the provisions that affect its severability analysis below.[1]

[1] The Arbitration Amendment contains the following waiver of judge and jury provision, which the Fifth Circuit held to be void:

- (i) Waiver of Judge and Jury. Each Arbitration Claimant, whether pursuing a claim for benefits or other relief on behalf of the Plan

**Section 11.09 - ARBITRATION REQUIREMENT AND PROCEDURE**

- (a) General. Subject to and without waiver of full compliance with the Plan's benefit claims procedures and the corresponding provisions of the summary plan description for this Plan, which must be exhausted with respect to any claim before any arbitration pursuant to this Section 11.09, all Covered Claims (as defined in Section 11.09(b)) must be resolved exclusively pursuant to the provisions of this Section. The judgment on the final award the arbitrator(s) renders may be entered in any court having jurisdiction thereof and shall be res judicata as to all Covered Claims the Arbitration Claimant (as defined in Section 11.09(b)) asserted or could have asserted in the arbitration demand. For the purposes of this Section, the term "IBC" means the Plan Sponsor, International Bancshares Corporation.

(Dkt. # 20 at 63.) Section 11.09(c) of the Amendment describes the general arbitration procedure.

- (c) Arbitration Procedure
  - (c)(2) The Arbitration Procedure and Rules (as defined in Section 11.09(f)) in this Section shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.* (the "FAA"), to the extent they do not conflict with ERISA or the FAA, or applicable state law. The final award the arbitrator(s) renders shall be final and binding on the

---

as a whole, by participating in this Plan, is specifically waiving the right it otherwise would have had to sue IBC, Trustee, the Plan Administrator or any party to whom administration or investment discretion is delegated hereunder in court and to have such claims decided by a judge or jury. This jury trial waiver is a separate and distinct agreement between all Arbitration Claimants and IBC. If for any reason the agreement to arbitrate under this Section is deemed unenforceable, the agreement to pursue claims in a non-jury trial shall remain in full force and effect.

(Dkt. # 20 at 74.) The abuse-of-discretion standard does not bear on the Court's present severability analysis.

parties to the arbitration with respect to the Arbitration Claimant's individual claims only.

(Id. at 65.) The next relevant portion of the Amendment, Section 11.09(h), supplies a blanket prohibition on group, class, and representative actions. The Fifth Circuit found this prohibition to be contrary to the plain text of the FAA. See infra (discussing the Fifth Circuit's rationale in more detail).

- (h) No Group, Class, or Representative Arbitrations. All Covered Claims must be brought solely in the Arbitration Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Arbitration Claimant's Covered Claims. It is the intent of this Section that disputes be resolved on an individualized basis between an individual Arbitration Claimant and IBC. It is agreed that no dispute shall be certified as a class or collective action, or on a basis involving claims brought in any purported representative capacity on behalf of current or former employees, applicants or other persons similarly situated and no arbitration proceeding under this Section shall be consolidated with, or joined in any way with, any other arbitration proceeding. Arbitration Claimant and IBC hereby waive any right to participate in a class or collective action or any representative proceeding (the "Class Action Waiver"). Arbitration Claimant and IBC shall be required to pursue any claims on an individual basis under this Section.

    - (h)(1) The requirements that all Covered Claims be brought solely in an Arbitration Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and that no Arbitration Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any rule of the AAA or decision to the contrary. The arbitrator(s) shall consequently have no jurisdiction or

authority to compel or permit any class, collective, group or representative action in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration.

- (h)(2) Any dispute or issue as to the applicability, validity, or enforceability of this Section's Class Action Waiver shall be delegated and committed to the arbitrator(s). Nothing in this Section shall preclude any party to the arbitration from seeking interim or provisional relief or remedies in aid of arbitration from the Western District of Texas.

(Id. at 73–74.) The Amendment also contains the following severability clause, which is a principal focus of the Court's analysis.

- (k)(4) If any provision of this Section is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed, and such adjudication shall not affect the validity of the remainder of this Section.

(Id. at 75.) Relatedly, the Plan contains a general severability clause. The Court reproduces that provision below.

**Section 13.06 – Severability of Provisions**

- If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and the Plain shall be construed and enforced as if such provisions had not been included.

(Id. at 57.)

II. Fifth Circuit's Remand Order

On appeal, Defendants asserted (1) that the Amendment's arbitration provision was valid and enforceable as to Mr. Parrott; (2) that the

effective vindication doctrine did not apply; and (3) the Plan did not impermissibly alter the standard of review required for fiduciary actions. Parrott, 167 F.4th at 734. In its review of the Amendment and Plan, the Fifth Circuit determined that the Amendment's anti-representative-action provision and remedy limitation, both contained in Section 11.09(h) (see Dkt. # 20 at 73–74), "violated the effective vindication doctrine." Parrott, 167 F.4th at 739. To wit, the Fifth Circuit construed the requirement that "all Covered Claims must be brought solely in the Arbitration Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis" as being "facially at odds with the statutory text of [29 U.S.C.] § 1109 and the remedy it provides." Parrott, 167 F.4th at 739; (see Dkt. # 20 at 73–74 (Section 11.09(h)(1)).)

The Fifth Circuit explained that the "[Federal Arbitration] Act establishes 'a liberal federal policy favoring arbitration agreements.'" Parrott, 167 F.4th at 734–35 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Moreover, it observed that "[a] court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Id. at 735 (quoting Viking River Cruises, Inc. v. Moriana, 596 U.S. 639, 650 (2022) (internal citation and footnote omitted)). As the panel noted, "[u]nder that principle, the FAA preempts any state rule discriminating

on its face against arbitration—for example, a law prohibiting outright the arbitration of a particular type of claim." Id. (citation modified).

A. Effective Vindication Doctrine

In response to the question, "Does the Arbitration Provision Run Afoul of the Effective Vindication Doctrine?" the Fifth Circuit answered "yes." See id. at 738–40. More precisely, it reasoned that "[t]he doctrine requires a court to invalidate arbitration agreements that 'operate . . . as a prospective waiver of a party's right to pursue statutory remedies.'" Id. at 738 (quoting Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (citation modified)). The doctrine concerns "provision[s] in an arbitration agreement forbidding the assertion of certain statutory rights." Id. (quoting American Express, 570 U.S. at 236). After noting that several of its sister circuits had adopted the doctrine, the Fifth Circuit held that the Amendment's "anti-representative-action clause and remedy limitation are violative of the . . . doctrine." Id. at 740; see also id. (identifying supporting authorities from the Second, Third, Sixth, Ninth and Tenth Circuits (first citing Platt v. Sodexo, S.A., 148 F.4th 709, 721 (9th Cir. 2025); then citing Fleming v. Kellogg Co., No. 23-1966, 2024 WL 4534677, at *4–6 (6th Cir. Oct. 21, 2024); then citing Cedeno v. Sasson, 100 F.4th 386, 400–01 (2d Cir. 2024); and then citing Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA, 72 F.4th 499, 507 (3d Cir. 2023))).

B. Ambiguity

Applying Texas law, the Fifth Circuit next held that Section 11.09(h)(1) was ambiguous because it was unclear whose authority the provision purported to limit: that of the arbitrator or that of all tribunals, including this Court. Parrott, 167 F.4th at 741. The Fifth Circuit observed that "no evidence [supports], nor [has] either party allege[d], that the FAA preempts Texas law when it comes to interpreting the severability clause." Id. at 741; see also id. at 741 n.8 ("The FAA preempts any state rule discriminating on its face against arbitration—for example, a law 'prohibit[ing] outright the arbitration of a particular type of claim.'" (quoting Viking River Cruises, 596 U.S. at 650) (alteration in original))). And, lastly, it directed this Court to determine whether the Amendment's severability clause, Section 11.09(k)(4), is enforceable such that the arbitration provision is severable. Id. at 741–42.[2]

In particular, the Fifth Circuit held that the rule laid down by Section 11.09(h)(1)—"no Arbitration Claimant shall be entitled to receive, and shall not be awarded any relief other than individual relief, shall govern irrespective of any rule of the AAA or decision to the contrary"—was unclear.

---

[2] The Court noted that "Parrott's reading of the arbitration provision is plausible on its face but becomes less certain when the provision is looked at in context." Id. at 741. Nevertheless, the Court stated, "[w]e place no limitation on the matters that the district court may address on remand, and we make no suggestion as to what decisions it should reach." Id. at 743.

See id. at 741–42. Reading it in the broader context of the section, the panel focused on the term "consequently" in the following sentence: "The arbitrators shall *consequently* have no jurisdiction or authority to compel or permit any class, collective, group or representative action in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration." (Dkt. # 20 at 73 (emphasis added)); accord Parrott, 167 F.4th at 741. Ultimately, it concluded, "[t]he ambiguity of the contractual provision means that we should remand to the district court, as the interpretation of an ambiguous contractual provision is a fact issue to be decided by the trier of fact." Parrott, 167 F.4th at 742 (footnote omitted). Relying on Coker v. Coker, the Fifth Circuit reasoned that under Texas law "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." Parrott, 167 F.4th at 741 (quoting Coker, 650 S.W.2d 391, 393 (Tex. 1983)).

## LEGAL STANDARD

As a threshold matter, the answer to the question of whether a particular provision in a contract is severable hinges on Texas state law. See Parrott, 167 F.4th at 740–41 & n.8 (collecting authorities holding that courts "apply applicable state law when assessing the existence of a valid arbitration

agreement unless the state law is preempted by federal law”).[3] This Court is bound to “look to the decisions of the Texas Supreme Court (and lacking any authoritative decision, decisions from the intermediate appellate courts) to determine matters of Texas law.” Palmquist v. Hain Celestial Grp., Inc., 103 F.4th 294, 306 (5th Cir. 2024) (citing Primrose Operating Co. v. Nat’l Am. Ins. Co., 382 F.3d 546, 564–65 (5th Cir. 2004)), aff’d and remanded, 607 U.S. 421 (2026).

Under Texas law, part of a contract is severable “so long as it does not constitute the essential purpose of the agreement.” In re Poly-Am., L.P., 262 S.W.3d 337, 360 (Tex. 2008) (first citing Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978); and then citing Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 565 (internal citation omitted)). Furthermore, “[w]hether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself.” Id. (citing John R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 86 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (internal citation omitted)). Thus, “[t]he relevant inquiry is whether or not [the] parties would have entered into the agreement absent the unenforceable provisions.” Id. (citing, *inter alia*,

[3] As mentioned, the Fifth Circuit noted that “there is no evidence, nor does either party allege, that the FAA preempts Texas law when it comes to interpreting the severability clause.” Parrott, 167 F.4th at 741.

Patrizi v. McAninch, 269 S.W.2d 343, 348 (Tex. 1954)). Texas courts "have previously allowed severance of illegal contract provisions where the invalid provisions were 'only a part of the many reciprocal promises in the agreement' and 'did not constitute the main or essential purpose of the agreement.'" Id. (quoting Williams, 569 S.W.2d at 871).

Severability clauses are not determinative. See, e.g., John R. Ray, 923 S.W.2d at 86. To be sure, "the purpose of a severability clause is to allow a contract to stand when a portion has been held to be invalid." Id. Yet severability clauses cannot *ipse dixit* transform an unenforceable contract into one that a court like this one can enforce absent the offending provisions. See id. They are enforceable only when the severed portions are not mutually dependent. See Poly-America, 252 S.W.3d at 360. "Whether covenants are mutually dependent is determined by the intent of the parties at the time the contract was formed, as evidenced by the language of the contract." John R. Ray, 923 S.W.2d at 86 (citing Greenstein v. Simpson, 660 S.W.2d 155, 160 (Tex. App.—Waco 1983, writ ref'd n.r.e.) (internal citation omitted)). "If the intent of the parties is unclear, the court will presume the promises are dependent rather than independent." Id.

## DISCUSSION

As an academic matter, how the Mount Rushmore of contracts law professors—Corbin, Williston, Farnsworth, and Fuller—would decide this case in theory is a fascinating question. Fortunately, the Court's inquiry is

constrained. It may only consider how Texas law, as determined by Texas statute and the rules of decision from both the Texas Supreme Court and Texas's intermediate appellate courts, applies to this case. See Palmquist, 103 F.4th at 306; Parrott, 167 F.4th at 741. The Court turns to that analysis below.

I. Severability

In Poly-America, the Texas Supreme Court held that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." 262 S.W.3d at 360 (citing Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978)); see also Restatement (Second) of Contracts § 208 (1981) ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.").

Applying this framework, the Court's task is to determine whether the Amendment provisions that the Fifth Circuit determined to violate the effective vindication doctrine are *either* (1) severable such that the Amendment may be enforced without them *or* (2) not severable such that the Amendment cannot be enforced. For the reasons that follow, the Court determines that offending provisions are *not* severable.

A. Parties' Arguments

1. Mr. Parrott

Mr. Parrott first argues that this Court cannot sever the offending provisions and require arbitration of representative claims because doing so "would require the Court to affirmatively rewrite [the Amendment,] which Texas law prohibits." (Dkt. # 47 at 16 (citing Great Am. Ins. Co. v. Primo, 512 S.W.3d 890, 893 (Tex. 2017).) To support this claim, Mr. Parrott identifies a variety of provisions within the Amendment that either expressly or impliedly indicate that "arbitrators lack authority and jurisdiction to hear representative actions." See id. (citing §§ 11.09(h)(1); 11.09(c)(2); 11.09(f)(3), (4), (15)).) These provisions, he reasons, constitute an "interlocking set of obligations" such that "'the illegal portions . . . are not simply incidental provisions' of the Arbitration Amendment and they cannot be severed." Id. (quoting In re OCA, Inc., 552 F.3d 413, 423–24 (5th Cir. 2008).)

Next, Mr. Parrott contends that "[t]he Arbitration Amendment unambiguously prohibits severing § 11.09(h)." (See Dkt. # 47 at 17–20.) He reads the language from 11.09(h)(1), which indicates that the proscription of representative actions "shall govern irrespective of any rule of the AAA or decision to the contrary," to foreclose arbitration of any class or representative claims *notwithstanding* a court decision. (Id. at 18 (quoting § 11.09(h)(1)); see also id. (reproducing the subsequent sentence from the provision: "The arbitrators shall consequently have no jurisdiction or authority to compel or

permit any class, collective, group or representative action in arbitration").) Mr. Parrott indicates that the subsequent sentence is *not* limited by the preceding sentence and, as such, "decision to the contrary" is not "implicitly limited to a 'decision *of the arbitrator(s)*.'" (Id. (emphasis in original).)

In support of this position, Plaintiff identifies several rules of decision from Texas courts that urge courts construing contracts to focus their analysis on the contract's plain text. See, e.g., Great American, 512 S.W.3d at 893 ("A contract's plain language controls, not 'what one side or the other alleges they intended to say but did not.'" (quoting Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 127 (Tex. 2010))); Cleary v. Am. Airlines, Inc., No. 4:21-CV-00184-O, 2022 WL 5320126, at *5 (N.D. Tex. July 22, 2022) ("The principle of e*xpressio unius est exclusio alterius* directs the Court that "the expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed." (quoting Oxy USA, Inc. v. Sw. Energy Prod. Co., 161 S.W.3d 277, 285 (Tex. App.—Corpus Christi 2005, pet. denied)) (citation modified). Moreover, Mr. Parrott argues that the fact that "courts, rather than the arbitrator, must decide whether an agreement to arbitrate claims . . . presently exists" militates *against* this Court severing the offending provision. (See Dkt. # 47 at 19 (quoting Transcor Astra Grp. S.A. v. Petrobras Am. Inc., 650 U.S. 462, 482 (Tex. 2022)).)

And, finally, Mr. Parrott contends that Section 11.09(h) is an "essential part of the Arbitration Amendment" such that severing it "would require "[this] Court to alter the agreed-upon 'Arbitration Procedure' and "Rules for Arbitration' . . . [thus] expand[ing] the authority of arbitrators." (Id. at 20.) This, Parrott maintains, makes the Amendment akin to a "a standalone contract" such that the entire Amendment must fail. (See id. at 20 n.5 (citing Ridge Nat. Res., L.L.C. v Double Eagle Royalty, L.P., 564 S.W.3d 105, 119 (Tex. App.—El Paso 2018) (describing the U.S. Supreme Court's holding in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 397–98 (1967), that the FAA's "legal fiction known as the separability doctrine . . . states that when arbitration clauses appear in the context of a larger contract—often referred to as a 'container contract'—the arbitration clauses should be dealt with as though they are separate from the remainder of the agreement").) This is so, he reasons, because "the parties did not consent to any expansion of the arbitrator's authority beyond what was agreed to in the Arbitration Agreement." (Id.); see also URI, Inc. v. Kleberg Cnty., 543 S.W.3d 755, 767 (Tex. 2018) (recalling that courts applying Texas contract law have a "responsibility 'to honor the parties' agreement' without altering it" (quoting Gilbert, 327 S.W.3d at 126)).

2. IBC

To begin, IBC's frontline position is that both the representative action waiver and remedy limitation, which the Fifth Circuit held to be void, are severable. (See Dkt. # 46 at 4–8.) Like Mr. Parrott, IBC identifies case law

from Texas courts reflecting the well-settled maxim that "[i]n interpreting a contract, a court must 'ascertain and give effect to the intent of the parties as that intent is expressed in the contract.'" (Id. at 4–5 (quoting Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2008)).) IBC argues that this rule, especially when coupled with "[p]lain reading" of both the Amendment's and the Plan's severability clauses, indicates that "the representative action waiver and remedy limitation[] can and should be severed from the Arbitration Amendment." (Id. at 5.)

In context, IBC urges that the language from Section 11.09(h)(1) does not "prohibit a *court* decision from severing the representative action waiver and remedy limitation from the broader arbitration clause." (Id. at 6 (emphasis supplied).) To the contrary, IBC insists, "the provision is plainly referring to a decision of the *arbitrator(s)* to the contrary." (Id. (emphasis supplied).) IBC then invokes a dictionary definition to illustrate why "consequently" (a word that it views as dispositive) reveals that "the latter sentence demonstrating the 'effect' signaled by use of the word 'consequently' relates to *arbitrators*," means "that the prior sentence . . . also refers to arbitrators." (Id. at 7 (emphasis supplied).)

Then, IBC argues that Texas law supports severing the offending provisions in this instance. It analogizes to one case in which the Texas Supreme Court severed "illegal or unconscionable provision[s] . . . [that] do[] not constitute the essential purpose of the agreement." (Id. at 8 (quoting Poly-

America, 262 S.W.3d at 360)). Like Poly-America, IBC points out that this case also presents a remedy limitation and another provision (*i.e.*, that employees and employers would share arbitration fees) that were held to be illegal. (See id.) And, like the Texas Supreme Court held in Poly-America, IBC asks this Court to sever the two void provisions because "the intent of the parties, as expressed by the severability clause [in the arbitration agreement], is that unconscionable provisions be excised where possible." Id. (quoting Poly-America, 262 S.W.3d at 360).) There, the Texas Supreme Court identified the "main purpose" of the agreement was that "the parties . . . submit their disputes to an arbitral forum rather than proceed in court." Poly-America, 262 S.W.3d at 360.

B. Analysis

Ultimately, the Court concludes that the offending provisions are not severable. Similar to the Fifth Circuit's characterization of the participants' consent to the Amendment, the severability issue here is "somewhat close." See Parrott, 167 F.4th at 736. Even so, the balance tips in favor of Mr. Parrott.

First, the Court must consider the plain text of Section 11.09(h)(1). See Great American, 512 S.W.3d at 893. It states that the class action waiver "shall govern irrespective of any rule of the AAA or decision to the contrary." (Dkt. # 20 at 73.) The text is unequivocal. Contrary to Defendants' argument, the provision does not limit the term "decision" to one made by an arbitrator. (See Dkt. # 46 at 6.) There is neither a prepositional phrase nor any other grammatical means of limitation. Cf., e.g., Rowan Cos., Inc. v. Wilmington Tr.

Co., 305 S.W.3d 698, 710 (Tex. App.—Houston [14th Dist.] 2009) ("Under the grammatical 'rule of the last antecedent,' 'qualifying words, phrases, and clauses' are to be applied only to the immediately preceding words or phrase and 'are not to be construed as extending to and including others more remote.'" (quoting Elliot Coal Min. Co., Inc. v. Off. of Workers' Comp. Programs, 17 F.3d 616, 629–30 (3d Cir.1994)), review granted, judgment vacated, and remanded by agreement, No. 10-0195, 2011 WL 13419311 (Tex. Aug. 5, 2011). Nor does the word "consequently" in the following sentence, as Defendants would have this Court read that sentence, cabin the arbitrator's authority to "decision[s] of the arbitrator(s), within arbitration to the contrary." (Dkt. # 46 at 6–7 (emphasis deleted).) That language appears *nowhere* in the contract. (See generally Dkt. # 20 at 63–75.)

Simply put, it is not within the Court's purview to rewrite a contract or select between alternative readings outside the plain, ordinary meaning of the words on the page. See Seagull Energy, 207 S.W.3d at 345; see also Sundown Energy LP v. HJSA No. 3, Ltd. P'ship, 622 S.W.3d 884, 889 (Tex. 2021) ("As we have said time and again, courts may not rewrite a contract under the guise of interpretation."); id. at 889 n.22 (collecting Texas Supreme Court rules of decision that stand for this proposition). Accordingly, the Court acknowledges that "[c]ompelling Mr. Parrott to arbitrate on behalf of the Plan would require the Court to affirmatively rewrite the Arbitration Amendment to expand the jurisdiction and authority of the arbitrator beyond what is already

provided." (Dkt. # 47 at 1.) As Plaintiff notes, this "exceeds the Court's authority and the authority granted by any severability clause." (Id.); cf. Sundown Energy LP, 622 S.W.3d at 889; Great American, 512 S.W.3d at 893 ("We also refuse to . . . rewrite private agreements.").

The Court agrees with Defendants that Poly-America is the controlling authority from the Texas Supreme Court concerning severability. See 262 S.W.3d at 360. By that case's own terms, however, the offending provisions cannot be severed. See id. As discussed above, the Poly-America court identified the "main purpose" of an arbitration agreement between a plaintiff-employee and defendant-employer to be that "the parties . . . submit their [employment-related] disputes to an arbitral forum rather than proceed in court." Id. Defendants' position overlooks the Poly-America court's reasoning that "excising the unconscionable provisions we have identified [would] not defeat or undermine [the arbitration agreement's main] purpose." Id. Here, that is not the case. After applying Texas law, the Court considers Section 11.09(h) to reflect the Amendment's main purpose, which the Fifth Circuit invalidated because it effectively prevented Members like Mr. Parrott from vindicating their federal rights. See id.; Parrott, 167 F.4th at 741.

Ambiguity is also determinative here. The Fifth Circuit held that select Amendment terms are ambiguous. See Parrott, 167 F.4th at 741. This presents a stark contrast to Poly-America, which did not address ambiguity. In this case, ambiguity is antecedent to the issue of severability; the Poly-America

court, on the other hand, had the benefit of unambiguous contractual language. See Poly-America, 262 S.W.3d at 260.

The differences between the arbitration agreement at issue in Poly-America and the Amendment here are legion. There, the offending provisions had been deemed illegal under a Texas statute. See id. at 353 (holding a provision void under the Texas Workers' Compensation Act, V.T.C.A., Labor Code §§ 451.001, 451.002(a)–(b)). Here, a federal appellate court has determined that the aforementioned provisions violate *federal* law. See Parrott, 167 F.4th at 740–42. Moreover, the Poly-America plaintiff attempting to avoid arbitration sought only to vindicate a claim on his own behalf—specifically one for retaliatory discharge against his employer. See 262 S.W.3d at 345. There were no representative claims akin to those Mr. Parrott brings here.

The distinctions continue. The Poly-America court considered terms of an arbitration agreement whose terms materially differed from the ones in this case that the Fifth Circuit has already determined to be unenforceable. See supra. First, the Court held that provisions that split arbitration fees between the employer and employee were unenforceable where they operated to prohibit an employee from fully and effectively vindicating statutory rights. See Poly-America, 262 S.W.3d at 356. To wit, the Court explained that such terms "are not enforceable" upon a showing of "*some evidence* that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." Id. (emphasis in

original) (first citing In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001); and then citing In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007)). Notably, that determination was squarely rooted in *Texas* law; here, and as mentioned above, the Fifth Circuit has determined that the offending Amendment provisions violate *federal* law.

Next, the Poly-America Court determined that "the main purpose of the agreement is for the parties to submit their disputes to an arbitral forum rather than proceed in court." Cf. 262 S.W.3d at 360. Like Poly-America, there is a colorable argument that the Amendment's main purpose was to keep claims like Mr. Parrott's outside Article III courts. See id. Even accepting Defendants' contention that this was, in fact, the Amendment's main purpose, the principles of Texas jurisprudence that prevent courts like this one from rewriting contracts caution against severability because doing so would have the effect of rewriting the Amendment. Cf. Seagull Energy, 207 S.W.3d at 345; Sundown Energy, 622 S.W.3d at 889 & n.22.

The next inquiry is "would [the parties] have entered into the agreement absent the unenforceable provisions[?]" If the answer is yes, then—and only then—the Court can sever said provisions. See Poly-America, 262 S.W.3d at 360. Here, however, neither the Plan nor the Amendment supports such a finding. Still accepting Defendants' reading that, like Poly-America, the Amendment's central purpose is to keep the parties out of court, nothing indicates that the parties would have agreed to an Amendment *without* the

representative action waiver or remedy limitation terms. (See Dkt. # 20 at 73.) To the contrary, the Amendment provides, "[a]ll Covered Claims must be brought solely in the Arbitration Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." (Id.) And, as the Fifth Circuit reasoned, "[b]ecause § 1132(a)(2) suits, by definition, must be brought in a representative capacity and plan participants are entitled to bring suit to recover all losses and profits, the [Amendment's] anti-representative-action clause and remedy limitation are violative of the effective vindication doctrine." Id. The Court cannot conclude that the parties would have agreed to the Amendment without this offending provision. Cf. Poly-America, 262 S.W.3d at 360.

Furthermore, severability clauses, such as the two here—the one in the Amendment and the other in the broader Plan—cannot *ipse dixit* transform an unenforceable contract into one that this Court can enforce via simple deletion of the offending provisions. See John R. Ray, 923 S.W.2d at 86. Instead, the Court must probe whether the series of provisions at issue are mutually dependent promises that seek to realize that "main purpose," in which case Texas law holds that the offending provisions cannot be severed. See id. Where this Court concludes that the unconscionable provision(s) "constitute[s] the essential purpose of the agreement," Poly-America instructs that Texas law does *not* require severability. Id. at 360 (first citing Williams, 569 S.W.2d at 871; and then citing Hoover, 206 S.W.3d at 565).

In fact, it prohibits severability. See id.; cf. Restatement (Second) of Contracts § 208 (1981).

The Court concludes that there are several other provisions that mutually depend on the offending provisions: Sections 11.09(h)(1); 11.09(c)(2); 11.09(f)(3), (4), and (15). Accordingly, Mr. Parrott's brief encapsulates the Court's conclusion: "Taken together, the Amendment's provisions reflect a deliberate, belt-and-suspenders design: each independently foreclos[ing] arbitral authority over representative claims, and all confirm that no such authority was ever intended." (Dkt. # 47 at 17 (citing Commc'ns Transmission, Inc. v. TriStar Commc'ns, Inc., 798 F. Supp. 406, 407 (W.D. Tex. 1992)).)[4] Although the two severability clauses provide belt-and-suspenders evidence of the parties' intent to go to arbitration, the proverbial trousers of the contract that they purport to hold up provide little coverage in the wake of the Fifth Circuit's holding. See Parrott, 167 F.4th at 738–42. In other words, what is left for the Court to enforce differs in kind from what the parties privately agreed to enforce before the Fifth Circuit's ruling. Accordingly, the failure of one or several dependent Amendment provisions, like those the Fifth Circuit invalidated, prevents the

[4] To the extent that IBC urges the Court to discover meaning beyond the plain text, the Court finds those arguments to be without merit. (See Dkt. # 46 at 5–8.)

Court from severing them from the greater whole. Poly-America, 262 S.W.3d at 360.

And finally, even if the Court were to find the parties' intent to be unclear (*i.e.*, were it to deem the Amendment's provisions discussed above to evince a "main purpose" that was indiscernible to the Court), Texas law would require that the Court reach the same outcome. See John R. Ray, 923 S.W.2d at 86 ("If the intent of the parties is unclear, the court will presume the promises are dependent rather than independent." (citing Greenstein, 660 S.W.2d at 160)).

## CONCLUSION

For the reasons above, the Court determines that the representative action waiver and remedy limitation are not severable.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, October 9, 2026.

______________________________________
David Alan Ezra
Senior United States District Judge